UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(*Miami Division*)

SUNTRUST MORTGAGE, INC.         CASE NO.:14-CV-21030-MOORE/MCALILEY

    Plaintiff,

v.

ATTORNEYS' TITLE INSURANCE FUND, INC.; DARLENE FERNANDEZ CARUS; MARIA T. LOPEZ; FERNANDEZ CARUS, P.A.; and MARIA T. LOPEZ, P.A.

    Defendants.

_____/

**PLAINTIFF SUNTRUST MORTGAGE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ATTORNEYS' TITLE INSURANCE FUND, INC.'S MOTION TO DISMISS <u>COUNTS II, IV, VI, VIII, IX, X AND XIV OF THE COMPLAINT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STANDARD OF REVIEW .........................................................................................................1

FACTS AS PLED IN THE COMPLAINT..................................................................................2

ARGUMENT .................................................................................................................................4

      A.    SUNTRUST'S CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE RELATED TO BREACHES OF EXPRESS TERMS OF A CONTRACT, DO NOT VARY ANY CONTRACTUAL TERMS, ARE NOT DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS, AND ADDRESS ATIF'S CONSCIOUS ACTIONS TO FRUSTRATE SUNTRUST'S REASONABLE CONTRACTUAL EXPECTATIONS…………………………………………………..4

           1.    SunTrust Has Properly Alleged ATIF's Actions Consciously and Deliberately Frustrated the Common Purpose of the Contracts ........................................................................................................5

           2.    The Cases Cited by ATIF are Unpersuasive and Distinguishable ......................................................................................6

      B.    THE EXEMPTION FOR AN ATTORNEY TITLE INSURANCE AGENT CITED BY ATIF UNDER FLORIDA STATUTES §627.792 DOES NOT APPLY ................................................................7

           1.    *Hechtman* Involved an Attorney Engaged in the Practice of Law, Unlike Carus and Fernandez Carus, PA in This Case ...............8

           2.    SunTrust Alleged that Carus and Fernandez Carus, PA Were Not Actively Practicing Law .............................................................8

      C.    ATIF OWES A FIDUCIARY DUTY TO SUNTRUST BECAUSE IT EXCEEDED ITS TRADITIONAL ROLE AS A TITLE INSURER ......................................................................................................9

           1.    The Complaint Alleges the Existence of a Heightened Duty Based on ATIF's Advisory Role and Possession of Unique and Relevant Knowledge ......................................................................10

           2.    The General Fiduciary Duty Cases Cited by ATIF Do Not Address the Issues in This Case.......................................................11

CONCLUSION............................................................................................................12

## TABLE OF AUTHORITIES

### CASES

1. *Allstate Ins. Co. v. Estate of Robert M. Levesque*,
   2010 WL 2978037, *1 (M.D.Fla. 2010) ..........................................................................3

2. *Argonaut Dev. Grp., Inc. v. SWH Funding Corp.*,
   150 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001) ................................................................11

3. *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989)...........11

4. *Barnett Bank of West Fla. v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986).........................10

5. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...............................................1

6. *Blackstone v. Alabama*, 30 F.3d 117, 120 (11th Cir 1994)...............................................1

7. *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*,
   532 F. Supp. 2d 1350, 1359 (M.D. Fla. 2007).................................................................6

8. *Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999) .......................................6

9. *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994)...........................10

10. *Centurion Air Cargo, Inc. v. United Parcel Service Co.*,
    420 F.3d 1146, 1151 (11th Cir. 2005) .............................................................................4

11. *Conley v. Gibson*, 355 U.S. 41, 47 (1957) ........................................................................1

12. *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) ................................................................9

13. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ....................................................................1

14. *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001)..........4

15. *Fine v. First Southwest Co.*, 2005 WL 2063832, at *3 (M.D. Fla. 2005) ......................10

16. *First Nationwide Bank v. Florida Software Services, Inc.*,
    770 F. Supp. 1537, 1542 (M.D. Fla. 1991).....................................................................4

17. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) ...........................................................9

18. *Green v. FedEx Nat., LTL, Inc.*, 2009 WL 2905907, at *4 (M.D. Fla. 2009) .................4

19. *Hechtman v. Nations Title Ins. of New York*, 840 So. 2d 993 (Fla. 2003).....................7,8

20. *Moss v. Appel*, 718 So. 2d 199, 201 (Fla. 4th DCA 1998) ..............................................9

21. *Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*,
    329 F. Supp. 2d 1309, 1312 (S.D. Fla. 2004) ...............................................................4,7

22. *Publix Super Markets, Inc. v. Wilder Corp. of Delaware*,
    876 So. 2d 652, 654 (Fla. 2d DCA 2004) .......................................................................6

23. *Randolph v. Mitchell*, 677 So. 2d 976, 978 (Fla. 5th DCA 1996) ...................................10

24. *Saxon Financial Group, Inc. v. Rath*, 2013 WL 3278662, *7 (S.D. Fla. 2012) ...............7

25. *Security Title Guarantee Corp. of Baltimore v. McDill Columbus Corp.*,
    543 So. 2d 852, 854 (Fla. 2d DCA 1989)… ................................................................9

26. *The Florida Bar v. Golden*, 566 So. 2d 1286 (Fla. 1990)...............................................10

27. *Trief v. American General Life Ins. Co.*,
    444 F. Supp. 2d 1268, 1270 (S.D. Fla. 2006)… ...........................................................6

28. *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) ......................................1

29. *Watkins v. NCNB Nat. Bank of Florida, N.A.*,
    622 So. 2d 1063 (Fla. 3d DCA 1993) ........................................................................11

## STATUTES AND RULES

1. Rule 8, Fed. R. Civ. P. .....................................................................................................1
2. Rule 12(b)(6), Fed. R. Civ. P. ..........................................................................................1
3. Fla. Stat. §627.792 .....................................................................................................7,8,9
4. Fla. Stat. §626.8417 ......................................................................................................8,9
5. Rule 3-7.9(a), Florida Bar Rules of Discipline .............................................................12

## PRELIMINARY STATEMENT

Defendant, ATTORNEYS' TITLE INSURANCE FUND, INC. ("ATIF") has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts II, IV, VI, VIII, IX, X and XIV of SUNTRUST MORTGAGE, INC.'s ("SunTrust") Complaint (the "Motion") [ECF 21]. Specifically, ATIF contends that SunTrust failed to state a cause of action for breach of the implied covenant of good faith and fair dealing (Counts II, IV, VI and VIII), action under Florida Statutes § 627.792 (Counts IX and X), and breach of fiduciary duty (Count XIV). In order to make its arguments, ATIF goes beyond the four corners of SunTrust's Complaint [ECF 1] and fails to demonstrate any pleading deficiencies in the allegations as pled.

## STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the allegations in the complaint and must construe them in a light most favorable to the plaintiff. *See Jackson v. Bellsouth Telecomms*., 372 F.3d 1250, 1262 (11th Cir. 2004).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not plead specific facts; rather, the complaint need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citations omitted). Moreover, at the motion to dismiss stage, courts have established an exceedingly low threshold in determining whether a complaint is sufficiently pled. *See U.S. v. Baxter Intern., Inc*., 345 F.3d 866, 880 (11th Cir. 2003). To warrant dismissal of a complaint under Rule 12(b)(6), it must be clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Blackstone v. Alabama*, 30 F.3d 117, 120 (11th Cir 1994).

## **FACTS AS PLED IN THE COMPLAINT**

The Complaint describes a series of grossly negligent and reckless acts and omissions by ATIF and its agents leading to the loss by SunTrust of approximately $600,000.00. The loss arises from a real estate transaction between buyer, Klautrelle Long ("Long") and seller, Roberto Carrasco ("Carrasco"), financed by SunTrust (the "Transaction"). Compl. ¶¶1-2. The Transaction took place in February 2008. Compl. ¶¶32-34. In advance of the Transaction, ATIF issued a real estate closing protection letter (the "CPL") to SunTrust, which covered the two (2) mortgage loans to be given by SunTrust to Long to finance the purchase of the real property located at 361 Poinciana Island Drive, #1122, Sunny Isles Beach, Florida 34568 (the "Property"). Compl. ¶¶6, 34. The CPL promised to reimburse SunTrust for any actual losses arising out of the fraudulent or dishonest handling of SunTrust's funds or documents, or for the failure of ATIF's agents and/or approved attorneys to comply with SunTrust's closing instructions in connection with the closing of the Transaction. Compl. ¶¶6, 35; Exhibit "A" at ¶A. The CPL was the first of many inducements used by ATIF to encourage SunTrust to use and trust ATIF's agents and approved attorneys with the handling of its funds and documents at the closing of the Transaction. Compl. ¶6.

Additionally, as a way to further reassure SunTrust of the trustworthiness of ATIF's agents and approved attorneys in handling its funds and documents at closing, ATIF issued a title commitment (the "Commitment") to SunTrust in connection with the Transaction, whereby ATIF contractually obligated itself to provide title insurance policies for each of the SunTrust mortgage loans in connection with the closing of the Transaction. Compl. ¶7. In so doing, ATIF touted its own reputation in the industry to induce SunTrust to use its services. Compl. ¶143. In its role as title insurer, ATIF used its position and reputation to induce SunTrust to use ATIF's own agent, Darlene Fernandez Carus ("Carus") and her professional association, Fernandez Carus, P.A. ("Fernandez Carus PA"), as the issuing title agent and approved attorney to issue its insurance policies, and serve as the closing agent for the Transaction. Compl. ¶¶5, 29, 143.

However, while holding out its member-agents as trustworthy, ATIF had actual knowledge that Maria T. Lopez ("Lopez"), who had been permanently terminated as an ATIF agent in November 2007 and disbarred based on multiple instances of fraudulent real estate transactions (Compl. ¶¶9, 17, Exhibit "D"), was holding herself out as a representative of

Fernandez Carus PA.  Compl. ¶¶37, 56.  In fact, ATIF had knowledge of the illegal actions taken by Lopez as early as March 2006, as evidenced by ATIF's complaint filed against Lopez on or about June 17, 2008, in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.  Compl. ¶56; Exhibit "L" at ¶8.[1]  Notwithstanding ATIF's lawsuit against Lopez and its knowledge of her terminated status as a member of ATIF and that she continued to hold herself out as a representative of Fernandez Carus PA, ATIF failed to monitor the activities of it agent members.  Compl. ¶¶56, 146.

In reliance of ATIF's representations regarding the trustworthiness of its agents, in addition to the reasonable expectation by SunTrust that ATIF would abide by the terms of its contractual obligations in connection with the Transaction (Compl. ¶56), SunTrust enlisted the services of ATIF agent Fernandez Carus PA, approved attorney Carus and her co-conspirator Lopez to provide the required title insurance documents and provide closing related services (Compl. ¶36). In reliance upon ATIF, SunTrust sent two (2) closing instructions letters to the closing agent, Fernandez Carus PA, to the attention of Lopez, in her representative capacity for Fernandez Carus PA.  Compl. ¶¶40-45.  Had SunTrust been advised of Lopez's prior unscrupulous history, it certainly would not have used the services of ATIF's agents.

ATIF's actions and omissions, including the failure of ATIF to supervise or monitor Carus and Fernandez Carus PA led to the defalcation of SunTrust's funds by Lopez.  Compl. ¶¶52, 53, 70, 84, 98, 112, 117, 118, 123, 124, 146, 147.  In fact, according to the Florida Bar, "ATIF has a loss exposure in excess of $1 million" resulting from Lopez's fraudulent activity. Compl. Exhibit "G" at ¶3(K).

---

[1] ATIF's complaint against Lopez is attached to the Complaint as Exhibit "L." This Court should take judicial notice of the petition for emergency suspension of Lopez filed by the Florida Bar in October, 2008, Florida Supreme Court Case No. SC08-1977, as Lopez appeared to be "causing great public harm" in perpetrating fraudulent real estate transactions.  *See* Petition at ¶3.  A copy of the petition for emergency suspension is attached hereto as **Exhibit "1."** Judicial notice may be taken of state court records to recognize the subject matter of the litigation or to recognize the judicial act that an order represents.  *Allstate Ins. Co. v. Estate of Robert M. Levesque*, 2010 WL 2978037, *1 (M.D.Fla. 2010).  The petition was ultimately granted on October 28, 2008.  A copy of the emergency suspension order is attached hereto as **Exhibit "2."**

# ARGUMENT

A. *SunTrust's claims for breach of the implied covenant of good faith and fair dealing are related to breaches of express terms of a contract, do not vary any contractual terms, are not duplicative of the breach of contract claims, and address ATIF's conscious actions to frustrate SunTrust's reasonable contractual expectations*

ATIF argues for dismissal of SunTrust's claims for breach of the implied covenant of good faith and fair dealing by stating that they are merely duplicative of the corresponding claims for breach of contract. This argument fails as a matter of law because ATIF ignores SunTrust's allegations that ATIF's conduct both breached an express contract term, and was related to ATIF's conscious and deliberate actions to interpret its duties in such a way as to frustrate SunTrust's reasonable expectations and deny SunTrust the benefit of its bargain. All contracts contain not only their express terms, but also terms and matters that are implied by law and both are deemed equally binding. *First Nationwide Bank v. Florida Software Services, Inc.*, 770 F. Supp. 1537, 1542 (M.D. Fla. 1991). Under Florida law, a covenant of good faith and fair dealing is implied in every contract, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations. *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). Moreover, even where a contract affords a party substantial discretion, that party "cannot capriciously exercise discretion...so as to thwart the contracting parties' reasonable expectations." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001). To sufficiently allege a breach of the implied covenant of good faith and fair dealing, a party:

> [M]ust demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by honest mistake, bad judgment or negligence; but rather by conscious and deliberate act, which unfairly frustrates the agreed and common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 329 F. Supp. 2d 1309, 1312 (S.D. Fla. 2004) (internal citations omitted). A cause of action for breach of the implied duty of good faith and fair dealing "is aimed at the spirit of the bargain, the expectations of the Parties, and the performance of the Parties under the Contract." *Green v. FedEx Nat., LTL, Inc.*, 2009 WL 2905907, at *4 (M.D. Fla. 2009).

Here, ATIF asserts that SunTrust's four counts for breach of the covenant of good faith and fair dealing (Counts II, IV, VI and VIII) are subject to dismissal because the allegations contained in each claim are merely duplicative of the allegations supporting each of the corresponding breach of contract claims.  *See* Mot. pg. 6-8.  ATIF, however, conveniently ignores the fact that these counts all contain allegations that ATIF not only failed to perform specific contractual duties as required, but also made conscious and deliberate decisions to interpret the contracts so as to avoid fulfilling its contractual duties and reimbursing SunTrust's losses.  Compl. ¶¶68-70, 82-84, 96-98, 110-112.  The allegations demonstrate that ATIF acted consciously and deliberately in a manner to unfairly frustrate the agreed common purpose of the agreements and to disappoint SunTrust's reasonable expectations under each of the agreements.  Compl. ¶¶69, 83, 97, 111.

### 1.   *SunTrust has properly alleged ATIF's actions consciously and deliberately frustrated the common purpose of the contracts*

Notwithstanding ATIF's contentions otherwise, SunTrust's four counts for breach of the covenant of good faith and fair dealing (Counts II, IV, VI and VIII) are related directly to breaches of express contractual duties and do not seek to override the terms of the subject contracts with ATIF.  *See* Compl. ¶¶ 65, 66, 79, 80, 93, 94, 107 and 108.  For example, in Counts II and IV, SunTrust alleges that the Commitment requires ATIF to issue a policy of title insurance to SunTrust upon satisfaction of the conditions and stipulations contained therein, and that SunTrust has performed all of its obligations under the Commitment and all conditions for issuance of the title insurance policy to SunTrust have been met.  *See* Compl. ¶¶ 66, 67, 80, 81.  SunTrust further alleges that ATIF breached the covenant of good faith and fair dealing by *consciously and deliberately refusing* to issue a policy of title insurance to SunTrust with regard to each of the subject mortgages (Compl. ¶¶ 68, 70, 82, 84) and by *consciously and deliberately* refusing to reimburse SunTrust for losses resulting from the fraudulent and dishonest conduct of ATIF's agents in failing to comply with SunTrust's written closing instructions.  Compl. ¶¶96-98, 110-112.  These allegations show that ATIF interpreted its contractual duties upon a perpetration of fraud in such a way as to deliberately frustrate the purpose of the contracts, beyond simply breaching its own contractual duties.

Additionally, in Counts VI and VIII of the Complaint, SunTrust alleges that the CPLs required ATIF to reimburse SunTrust for losses resulting from the fraudulent and dishonest conduct of ATIF's agents in failing to comply with SunTrust's written closing instructions.  *See*

-5-

Compl. ¶¶ 94, 108.  SunTrust again alleges that ATIF acted *consciously and deliberately* to frustrate SunTrust's reasonable expectations and the agreed common purpose of the CPLs by denying SunTrust's claim for the losses resulting from the fraudulent and dishonest conduct of ATIF's agents and approved attorneys, and their failure to comply with SunTrust's written closing instructions.  *See* Compl. ¶¶ 96, 97, 110, 111.  Despite ATIF's contentions, SunTrust's allegations clearly demonstrate that ATIF's failure to perform is not "an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1359 (M.D. Fla. 2007).

In sum, SunTrust's claims for breach of the implied covenant of good faith and fair dealing are directed to the intent of the bargain, the expectations of the parties, and the performance of the parties under the respective contracts.  Therefore, this Honorable Court should summarily reject ATIF's argument that the breach of the implied covenant of good faith and fair dealing claims are duplicative of the breach of contract claims, and should deny the Motion as to Counts II, IV, VI and VIII of the Complaint.

### 2. *The cases cited by ATIF are unpersuasive and distinguishable*

All of the cases cited by ATIF in support of its Motion are factually and procedurally distinguishable from the instant case, and therefore unpersuasive as precedent for this Court.  ATIF primarily relies on *Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999), in which the court held that a counterclaim for breach of the implied covenant must fail as a matter of law at the summary judgment stage for failure to identify an express contractual provision that had been breached, a necessary element of such a claim.  *Weaver*, aside from not being decided at the motion to dismiss stage (which itself is dispositive), was decided entirely based upon the absence of a breach of an express term of the underlying contract, whereas SunTrust has clearly alleged breaches of multiple contractual provisions throughout its Complaint.  The case of *Trief v. American General Life Ins. Co.*, 444 F. Supp. 2d 1268, 1270 (S.D. Fla. 2006) is similarly distinguishable on these grounds.

ATIF's reliance on *Publix Super Markets, Inc. v. Wilder Corp. of Delaware*, 876 So. 2d 652, 654 (Fla. 2d DCA 2004) is similarly misplaced from a procedural standpoint, as it was an appeal of a jury verdict and not a motion to dismiss.  Moreover, the primary issue was whether

Publix acted reasonably in exercising its contractual power to make a discretionary decision. In the instant case, SunTrust is alleging that ATIF acted in a *conscious and deliberate* manner to frustrate SunTrust's reasonable expectations and deny it the benefit of its bargain.

ATIF also cites to the case of *Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 329 F. Supp. 2d 1309, 1310-1311 (S.D. Fla. 2004). However, ATIF's reliance is once again misplaced as plaintiff's claim for breach of the implied covenant of good faith and fair dealing actually survived a motion to dismiss.

Finally, ATIF relies upon *Saxon Financial Group, Inc. v. Rath*, 2013 WL 3278662, *7 (S.D. Fla. 2012). In *Rath*, the court dismissed Rath's claim for breach of the implied covenant without prejudice, holding that the plaintiff's claim for breach of the implied covenant duplicated the allegations supporting the breach of contract claim. *Rath* is distinguishable from the instant matter because SunTrust's claims for breach of the implied covenant contain additional allegations to those found in its breach of contract claims and focus more on SunTrust's expectations of performance by ATIF under the subject contracts.

Each of these cases are distinguishable from the instant action because SunTrust has adequately pled the breach of several express terms in related contracts and has alleged that the actions of ATIF were *conscious and deliberate*, and intended to frustrate the agreed common purpose of the contract. Determination of whether ATIF's actions were in fact *conscious and deliberate* is inappropriate at this stage of the proceedings as it would require this Court to look outside of the four corners of the Complaint. At this stage, it is clear that SunTrust has alleged sufficient facts to state a claim for relief, and ATIF's Motion must be denied.

**B.   The exemption for an attorney title insurance agent cited by ATIF under Florida Statutes § 627.792 does not apply**

ATIF next seeks dismissal of Counts IX and X (action under Florida Statutes § 627.792) arguing that a title insurer is not statutorily liable for an attorney-agent's defalcation, conversion, or misappropriation pursuant to the statute. *See* Mot. pg. 10. ATIF bases its argument entirely on the Florida Supreme Court case of *Hechtman v. Nations Title Ins. of New York*, 840 So. 2d 993 (Fla. 2003). *See* Mot. pg. 8-9. However, ATIF's interpretation of *Hechtman* is incorrect because the statutory exception for an attorneys' liability under § 627.792 does not apply when, as here, an attorney is not engaged in the practice of law.

> 1. ***Hechtman* involved an attorney engaged in the practice of law, unlike Carus and Fernandez Carus PA in this case**

In *Hechtman*, a private mortgage lender filed a statutory claim pursuant to Fla. Stat. § 627.792 against its title insurer for losses sustained when the title insurer's agent (also a licensed, practicing Florida attorney) misappropriated funds held in the agent attorney's trust account. At summary judgment, the trial court entered judgment in favor of the title insurer, concluding that the title insurer was not liable to the Hechtmans under Fla. Stat. § 627.792 for defalcation committed by a licensed Florida attorney because the attorney was not a licensed title agent as prescribed by the statute. The Third District Court of Appeal and the Florida Supreme Court affirmed the decision of the lower court. Specifically, the Florida Supreme Court held that Fla. Stat. § 627.792 does not apply to attorneys who are acting as title insurance agents **if those agents are exempt from the licensing requirements of Fla. Stat. § 626.8417**. (Emphasis supplied). *Hechtman*, 840 So. 2d at 996.

However, "[i]f an attorney or attorneys own a corporation or other legal entity which is doing business as a title insurance agency **other than an entity engaged in the active practice of law**, the agency must be licensed and appointed as a title insurance agent." Fla. Stat. § 626.8417(4)(c) (emphasis added). Unlike in *Hechtman*, Carus owned a corporation that was doing business as a title insurance agency, and was not engaged in the active practice of law. Accordingly, Carus and Fernandez Carus PA were required to be licensed under Fla. Stat. § 626.8417(4)(c) and subject to the defalcation statute. Fla. Stat. § 627.792

> 2. ***SunTrust alleged that Carus and Fernandez Carus PA were not actively practicing law***

SunTrust alleged that Carus was a suspended member of the Florida Bar, and was the sole principal of Fernandez Carus PA. Compl. ¶¶16, 18. SunTrust further alleged that Carus and Carus PA were authorized as agents by ATIF to issue its title insurance commitments and policies in the State of Florida, during the time period ATIF was aware of their status with the Florida Bar and that they were no longer practicing law. Compl. ¶¶ 24, 25. In support of this contention, SunTrust attached an Unconditional Guilty Plea and Consent Judgment for Discipline pursuant to Rule 3-7.9(a), Florida Bar Rules of Discipline tendered by Carus, and, as accepted by the Supreme Court of Florida, an Order suspending Carus from the practice of law in the State of Florida, as exhibits to the Complaint. *See* Compl. Ex. "G," "H." The Unconditional Guilty Plea provides, in pertinent part, that: "… in July of 2006, Respondent

[Carus] closed her practice and began to work out of her father's electrical warehouse… During this time Respondent [Carus] was not seeing clients, but rather, was strictly handing title searches for Gulf Atlantic Title Services, Inc. and Title Closing Partners, receiving remuneration on a per file basis.  By February of 2006, Respondent [Carus] had *discontinued* doing legal work entirely due to the emotional strain caused by her deteriorating marital relationship." (Emphasis supplied).  *See* Compl. Ex. "H" at ¶9.32 c, pg. 6.

At this stage of the proceedings, SunTrust is only required to allege a short and plain statement that ATIF is statutorily liable for its agent's defalcation, conversion, or misappropriation pursuant to Florida Statutes § 627.792.  SunTrust has stated a plausible claim that ATIF's agents are not exempt from licensure pursuant to Fla. Stat. § 626.8417, and at this early stage, this Court must deny ATIF's Motion to dismiss Counts IX and X of the Complaint.

C.   ***ATIF owes a fiduciary duty to SunTrust because it exceeded its traditional role as a title insurer***

ATIF argues that it owes no fiduciary duty to SunTrust and that SunTrust has not alleged facts to establish the existence of any such duty.  *See* Mot. pg. 10-12.  However, a cursory review of the Complaint reveals that SunTrust alleged extensive facts substantiating a fiduciary duty owed by ATIF based on ATIF taking on an extra-contractual advisory role in encouraging SunTrust to use its agents at the closing of the Transaction, as well as its unique knowledge of its agents' untrustworthiness which was not conveyed to SunTrust.  These facts are further described, *infra*.

To establish a claim for breach of fiduciary duty, a plaintiff must plead the "existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."  *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).  A fiduciary duty is formed when a party is "under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation."  *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (internal citations omitted).  The scope of the fiduciary duty under Florida law is quite broad, and courts have found the existence of fiduciary duties in a wide array of contexts related to title insurance and real estate closings that bear on the facts of the instant case.  *See Security Title Guarantee Corp. of Baltimore v. McDill Columbus Corp.*, 543 So. 2d 852, 854 (Fla. 2d DCA 1989) (fiduciary duty owed by title insurer to insured mortgagee on the basis of title insurance commitment); *Moss v. Appel*, 718 So. 2d 199, 201 (Fla. 4th DCA 1998) (fiduciary duty is owed by insurance broker);

*Randolph v. Mitchell*, 677 So. 2d 976, 978 (Fla. 5th DCA 1996) (insurance broker owes a fiduciary duty to insured); *The Florida Bar v. Golden*, 566 So. 2d 1286 (Fla. 1990) (escrow agent owes a fiduciary duty).

Courts have found a fiduciary relation implied in law when "confidence is reposed by one party and a trust accepted by the other." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). A fiduciary duty may arise under special circumstances, whereby a party knows or has reason to know of its customer's trust and confidence under circumstances exceeding an ordinary commercial transaction. *Id.* at 518-19. For example, a bank assumes a duty to disclose to the customer a fact (1) material to the transaction, (2) "peculiarly within [the bank's] knowledge," and (3) "not otherwise available to the customer" if the bank transacts business with a customer with whom it established "a relationship of trust and confidence" and the transaction is one "from which the bank is likely to benefit at the customer's expense." *Barnett Bank of West Fla. v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986). Because of the factually intensive nature of determining whether an implied fiduciary duty exists, it is usually inappropriate to dismiss a claim for breach of fiduciary duty. *Fine v. First Southwest Co.*, 2005 WL 2063832, at *3 (M.D. Fla. 2005).

### 1. The Complaint alleges the existence of a heightened duty based on ATIF's advisory role and possession of unique and relevant knowledge

Notwithstanding ATIF's arguments to the contrary, ATIF exceeded its ordinary role in the context of its arms-length relationship with SunTrust by inviting SunTrust to place its trust and reliance in ATIF and its agents beyond what would be expected in the normal title insurer-insured relationship. Specifically, SunTrust alleged that ATIF took on such an extra-contractual duty when it expressly encouraged and advised SunTrust to use and trust its agents and approved attorneys with handling SunTrust's funds and documents at the closing of the Transaction. *See* Compl. ¶¶ 143-145. Furthermore, ATIF did so with prior knowledge of their agents' lack of trustworthiness (and possible criminal activity), and failed to inform or warn SunTrust. Compl. ¶56, 146.

By virtue of its involvement in the closing of the Transaction with SunTrust, an event from which ATIF was to benefit at SunTrust's expense, ATIF assumed a duty to disclose facts material to the closing of the Transaction, including a history of its agent's untrustworthiness. *See Barnett Bank*, 498 So. 2d at 925. As such, ATIF should have disclosed all information reasonably known to it from the supervision and monitoring of Carus and Fernandez Carus PA's

conduct and activities, in addition to any information known about Lopez and, upon discovery of same, should have immediately warned SunTrust of such misconduct and danger of loss. Compl. ¶146.   This is especially true given ATIF's suit against Lopez.   Compl. ¶56. Accordingly, SunTrust has sufficiently pled that ATIF owed it a fiduciary duty and breached that duty by failing to advise and protect it in connection with the closing of the Transaction.  As such, ATIF's Motion to dismiss Count XIV of the Complaint must be denied.

> 2.     *The general fiduciary duty cases cited by ATIF do not address the issues in this case*

None of the cases cited by ATIF in support of its argument are persuasive on the issues before this Court because each presupposes that a fiduciary duty cannot be established in the context of an arms-length transaction on facts that are distinguishable from the instant case. None of them address the situation presented by the instant case: where one party exceeds its typical role in the scope of the parties' relationship and has reason to know that the other party was placing its trust and confidence in it.  As a result, ATIF's reliance on both *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) and *Argonaut Dev. Grp., Inc. v. SWH Funding Corp.*, 150 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001) is misplaced.  Neither involves a situation where one party induces trust from the other by going beyond the contractual relationship to recommend the services of its own agent, which would confer a special benefit. ATIF describes *Watkins v. NCNB Nat. Bank of Florida, N.A.*, 622 So. 2d 1063 (Fla. 3d DCA 1993), as being similar to the instant case.  This case is also distinguishable because it does not involve a party to the transaction exceeding its arms-length contractual role, thereby establishing a fiduciary duty.  *Watkins* only addresses the general principle that a debtor-creditor relationship is generally insufficient to create a fiduciary duty.  Watkins does not allege, as in the instant case, that one party exceeded its contractual role and established a relationship whereby the other party was induced to trust its representations that its agents were trustworthy, nor that the representing party had superior knowledge and information about the trustworthiness of its agents. Accordingly, ATIF's reliance on *Watkins* is also misplaced.

## CONCLUSION

In summary, all of the arguments raised by ATIF must fail for the reasons cited, *supra*. SunTrust has properly pled all of the elements for: (1) breach of the implied covenant of good faith and fair dealing, (2) action under Florida Statute § 627.792, and (3) breach of fiduciary duty, as required to survive a motion to dismiss.

Based on the foregoing, SunTrust respectfully requests that this Honorable Court enter an Order denying ATIF's Motion to Dismiss Counts II, IV, VI, VIII, IX, X and XIV of SunTrust's Complaint, and granting such other and further relief as this Court deems just and proper under the circumstances.

>
> **LIEBLER, GONZALEZ & PORTUONDO**
> Attorneys for SunTrust Mortgage, Inc.
> Courthouse Tower- 25th Floor
> 44 West Flagler Street
> Miami, FL  33130
> Telephone:  (305) 379-0400
> Service E-mail:  service@lgplaw.com
>
>
> By:   /s/ Frank P. Cuneo
>       FRANK P. CUNEO
>       Florida Bar No. 123188
>       JACOB E. MITRANI
>       Florida Bar No. 715581

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of May, 2014, a true and correct copy of the foregoing has been electronically filed and sent via CM-ECF, to all parties on the below Service List.

> /s/ Frank P. Cuneo
> FRANK P. CUNEO

-13-

## SERVICE LIST

Leonard C. Atkins, IV, Esq.
Jacquin P. Gilchrist, Esq.
COHEN | RUIZ P.A.
*Attorneys for Defendant, Attorneys' Title Insurance Fund, Inc.*
201 S. Biscayne Blvd., Ste. 850
Miami, FL  33131-2310
Service e-mail:  litigation@crpa-service.com

Aaron P. Davis, Esq.
Barry L. Davis, Esq.
THORNTON, DAVIS & FEIN, P.A.
*Attorneys for Defendants, Darlene Fernandez Carus and Fernandez Carus, P.A.*
80 SW Eighth Street, Suite 2900
Miami, Florida 33130
E-Mail: adavis@tdflaw.com